Filed 11/30/22  Aska Sakan v. LA's Tasty & Healthy Food CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASKA SAKAN, INC., | |
| Plaintiff and Respondent, | G060481 |
| v. | (Super. Ct. No. 30-2018-00975694) |
| LA'S TASTY & HEALTHY FOOD, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Law Offices of Levi Reuben Uku, Levi Reuben Uku on behalf of Defendant and Appellant.

Bove Law Group, Brooke L. Bove on behalf of Plaintiff and Respondent.

LA's Tasty & Healthy Food, Inc. (Tasty) appeals from a judgment in favor of Aska Sakan, Inc. following a bench trial. At issue below was the validity and enforceability of a deed of trust securing a promissory note Tasty recorded against property owned by Aska Sakan. The trial court found the deed of trust and promissory note were forged, and the court ruled in favor of Aska Sakan on its causes of action for quiet title, cancellation of instrument, and injunctive relief. Tasty contends the judgment should be reversed because the trial court infringed upon its constitutional rights by refusing to provide it with a jury trial. We reject this contention because the record shows both parties agreed the matter was to proceed as a bench trial. Tasty also challenges the sufficiency of the evidence, making two related claims: (1) the trial court's determination the deed of trust and promissory note were forged is not supported by substantial evidence; and (2) the court should have ruled in Tasty's favor despite the court's concerns about the credibility of certain evidence supporting Tasty's defense. We conclude the trial court's decision is supported by substantial evidence and will not reevaluate the court's credibility findings or reweigh the evidence. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We take our factual summary from the court's statement of decision and the available record.

I.

THE PARTIES AND THE DISPUTE

Three individuals are central to this case: Abdurrezag Kaal, Hossein or Frank Wasiri, and Wasiri's mother-in-law Farideh Nourizadeh.

Kaal is in the real estate business and owns several companies in Morocco, where he lives, including a construction company Oujhalkhair Sarl (Oujhalkhair). Kaal came to the United States on a visa. He is the sole shareholder of Aska Sakan, a

2

company incorporated in California in 2014. That year, Aska Sakan purchased a carwash in Yorba Linda.

Kaal was introduced to Wasiri, who had prior experience running carwashes. Wasiri became Kaal's assistant at the carwash and supervised the employees.

Nourizadeh lives in Iran and is an owner of Samimi Marble Quarries (Samimi) in Iran, a company involved in mining and selling marble. Tasty, a California corporation, is owned either by Nourizadeh or Wasiri.

There were several disputed issues at trial: (1) whether Kaal and Nourizadeh entered into a partnership agreement in 2013 to form Aska Sakan in California; (2) whether Kaal and his company Oujhalkhair received $3.9 million in cash and merchandise from Samimi as part of Nourizadeh's investment in Aska Sakan; and (3) whether Kaal signed a deed of trust securing a promissory note for a $3.9 million debt to Tasty or did Wasiri forge Kaal's signature on the deed of trust, promissory note, and other documents.

## II.

### WASIRI ASSISTS KAAL WITH HIS AFFAIRS

Wasiri aided Kaal with his business and personal affairs because Kaal spoke limited English. To obtain a license for the carwash, Aska Sakan needed a bond and a general indemnity agreement was required. Wasiri took Kaal to a notary public for Kaal to sign the indemnity agreement. Kaal signed the indemnity agreement on October 21, 2015. Attached to the indemnity agreement was the notary public's certificate of acknowledgement page, which stated the notary had verified the identity of the individual who signed the document attached to the certificate.

Wasiri also helped Kaal apply for a new visa and helped him compile the documents he needed for the application, giving Wasiri access to Kaal's foreign business and financial information. Wasiri also assisted Kaal in his communication with his immigration attorneys.

3

Around the end of 2015, Kaal's visa application was denied and immigration authorities requested he leave the country. Kaal returned to Morocco and has not since been back to the United States. After Kaal left the country, Wasiri managed the carwash and paid its employees through Aska Sakan's bank account. Wasiri was fired in December 2017.

## III.

### TASTY RECORDS DEED OF TRUST AGAINST ASKA SAKAN'S PROPERTY

The month Wasiri was fired from the carwash, Tasty recorded a deed of trust and assignment of rents (the deed of trust) securing a promissory note against Aska Sakan's carwash property. The deed of trust stated it was for the purpose of securing payment of a $3.9 million debt by Aska Sakan to Tasty as evidenced by a promissory note. The deed of trust was dated October 21, 2015, the same day Kaal signed the indemnity agreement. Attached to the deed of trust was an exact copy of the notary public's certificate page from the indemnity agreement.

## IV.

### ASKA SAKAN FILES ITS LAWSUIT

In February 2018, Aska Sakan filed a complaint against Tasty, alleging four causes of action: (1) quiet title, (2) cancellation of instrument, (3) injunctive relief, and (4) declaratory relief. The factual basis of the causes of action was that the deed of trust and promissory note were forged. Aska Sakan denied it or Kaal was indebted to Tasty for $3.9 million.

## V.

### THE TRIAL

In the leadup to trial, both parties posted jury fees. In November 2020, the court called the matter for trial, and both parties announced ready. The court informed the parties the four causes of action were in equity and not triable by a jury. Both parties' counsel agreed the matter would proceed as a court trial.

4

The bench trial commenced on November 10 and continued over multiple dates in November 2020, January 2021, and March 2021. Tasty has not presented us with a reporter's transcript, agreed statement, or settled statement for the court proceedings on November 10 or 12, during which the court heard the complete testimony of witnesses Amir Kacem, Linda Mitchell, and Michael Nazari, and the partial testimony of witnesses Wasiri and Mohamed Ramadan. The following summary of the trial evidence is based on the record we have been provided.

A. Tasty's Evidence

Tasty presented testimony and documentary evidence to support its claim the contested deed of trust and promissory note were valid and enforceable. One such piece of evidence was a partnership agreement dated February 2013 between Oujhalkhair and Samimi. The agreement stated the two companies were forming a California company to be called Aska Sakan and the purpose of the partnership was real estate investment and development. According to the agreement, Oujhalkhair was to contribute $5 million in cash to the partnership and Samimi was to contribute cash and merchandise amounting to the same. The agreement was purportedly signed by Kaal for Oujhalkhair and Nourizadeh for Samimi.

Wasiri's testimony was inconsistent as to who drafted the partnership agreement. At one point, he testified he drafted the partnership agreement. Later, he testified it was prepared by Samimi's office, but he gathered information for the agreement and advised them it should be governed by California law. At the time, neither Kaal nor Nourizadeh lived in California. Because the agreement was in English, Wasiri reviewed it for Nourizadeh and advised her to sign it.

Mehdi Jalali, an employee of Samimi, testified he assisted in drafting the partnership agreement between Samimi and Oujhalkhair. He recalled flying with Nourizadeh to Dubai, where she and Kaal signed the agreement at a restaurant.

5

The court admitted into evidence invoices from Samimi showing shipments of unpolished marble to Oujhalkhair in 2013 and 2014.  Jalali testified, however, polished marble was sent to Oujhalkhair.  Wasiri testified these shipments from Samimi were part of its contribution to the Aska Sakan partnership.  But he did not have any bills of lading showing the merchandise was received by Oujhalkhair.

Wasiri testified Samimi shipped unpolished marble in 2013 to four general trading companies in Dubai, who were Samimi's customers and at Nourizadeh's request, these customers sent payment for the merchandise to one of Kaal's companies in Morocco via wire transfers.  These wire transfers totaled about $1 million.  According to Wasiri, this money was part of Samimi's investment in Aska Sakan.  In August 2015, Samimi drafted a letter to Oujhalkhair stating one of Samimi's customers had transferred over $1 million to Aska Sakan at Samimi's request.  Wasiri testified Samimi sent the letter to him and he gave it to Kaal, who then signed the letter as confirmation he had received the money.

A few months after Kaal signed the letter, Wasiri became concerned about Nourizadeh's investment in Aska Sakan, after seeing an email from one of the attorneys preparing Kaal's visa application.  The email included a list of things Kaal needed for his application and one item was Aska Sakan's stock ledger.  The email indicated the stock ledger must state Aska Sakan was owned solely by Oujhalkhair.  Aska Sakan's stock documentation showed Oujhalkhair owned the company; Samimi had not been issued any stock in Aska Sakan.  Aska Sakan's formation documentation did not mention any investment by Samimi.  Wasiri testified this concerned him because Nourizadeh did not have any security for her investment in Aska Sakan.

Wasiri drafted the promissory note and the deed of trust to secure Nourizadeh's purported investment in Aska Sakan.  The documents indicated Aska Sakan owed $3.9 million to Tasty, not Samimi or Nourizadeh.  Wasiri testified Kaal signed the deed of trust and promissory note in October 2015, when Kaal signed the general

6

indemnity agreement for the carwash. Wasiri kept the original deed of trust and promissory note.

B. Aska Sakan's Evidence

Kaal denied signing the deed of trust or promissory note. He testified his signatures on these documents had been forged. Kaal explained Wasiri took him to the notary public to sign the indemnity agreement and that was the only document he signed at the notary's office.

Kaal also denied knowing Nourizadeh and signing the partnership agreement with her. He denied having any communication with or conducting any business with her or her companies. Kaal testified he did not purchase or receive any marble from Nourizadeh or Samimi. He asserted his signature had been forged on documents purporting to show his company received marble from Samimi. Kaal further denied borrowing any money from Nourizadeh or Tasty for the purchase of the carwash. He admitted receiving wire transfers totaling $1 million from four trading companies but explained this was his personal money he transferred through those companies from his foreign accounts before moving to the United States.

Once Kaal returned to Morocco, he was unable to access Aska Sakan's bank accounts online, so Wasiri e-mailed him the company's bank statements. Kaal testified the bank statements he received from Wasiri were "fake" and hid Wasiri's embezzlement of over $1 million from the company.

Ramadan took over managing Aska Sakan after Wasiri's departure. Ramadan discovered money was missing from the carwash's accounts and believed Wasiri had taken it. Neither Ramadan nor Kaal had heard of Nourizadeh prior to the recording of the deed of trust in December 2017, which occurred after they fired Wasiri from the carwash.

Ramadan testified the signature on the partnership agreement was not Kaal's signature. Ramadan reviewed Oujhalkhair's records in Morocco and corroborated

7

Kaal's testimony that Kaal's companies did not engage in any business transactions with Samimi. Ramadan did not find any records showing Samimi had wired money to Oujhalkhair or that Samimi had directed third parties to wire money to Oujhalkhair. Ramadan was unable to find any records indicating that Kaal personally or his companies received $3.9 million in exchange for the promissory note.

C. Handwriting Experts

Both parties presented expert testimony by forensic document examiners concerning the issue of whether Kaal's signature was forged on the contested deed of trust and promissory note. Tasty has only provided us a record of the testimony of its expert, Beth Chrisman. Chrisman examined the deed of trust and promissory note and determined the signatures on those documents were originals, meaning they were ink signed on paper and not photoshopped. Wasiri gave her numerous documents, displaying what he represented to her were exemplars of Kaal's signature; Chrisman referred to these as the known documents. In her opinion, the same person signed the contested original documents and the known documents. Chrisman acknowledged it was possible Wasiri signed all of the documents and presented them to her as Kaal's signature.

Chrisman testified every notarized document should have its own notary acknowledgment. But here, the same notary public's acknowledgment page was attached to both the indemnity agreement and the deed of trust; one was the original, and the other was a copy.

VI.

PROPOSED STATEMENT OF DECISION AND TASTY'S OBJECTIONS

After hearing the parties' closing arguments, the court took the matter under submission. It later issued a tentative and proposed statement of decision, in which it discussed the evidence presented, made findings of fact, and made credibility determinations. The court explained its tentative conclusion Aska Sakan had proved the

8

deed of trust and promissory note were forged and had prevailed on its causes of action for quiet title, cancellation of instruments, and injunctive relief.

Tasty filed two documents in response. First, Tasty requested a statement of decision on the factual and legal bases of the court's tentative ruling and findings in favor of Aska Sakan on the three causes of action. Second, Tasty filed objections to the court's tentative and proposed statement of decision. In its objections, Tasty asserted the court's tentative decision did not explain the court's conclusion that Aska Sakan had met its burden of proving forgery of the deed of trust and promissory note. Tasty argued the court's ruling was ambiguous, inconsistent with the trial evidence, omitted certain facts, misstated testimony, and failed to reconcile conflicting evidence.

VII.

STATEMENT OF DECISION

After considering Tasty's request for a statement of decision and objections, the court issued its statement of decision. The court indicated Tasty's objections were "largely improper" because they were essentially assertions the court should have reached different conclusions. In its statement of decision, the court stated it "considered and weighed the testimony of all the witnesses, . . . evaluated the credibility of each witness, . . . considered and weighed the documentary evidence submitted by the parties, and . . . considered the arguments of counsel."[1] The court concluded, based on the totality of the evidence, Aska Sakan had proved the deed of trust and promissory note were forged and therefore were void and unenforceable. The court ruled in favor of Aska Sakan on its causes of action for quiet title, cancellation of instruments, and injunctive relief. As to the fourth cause of action, the court concluded declaratory relief was unnecessary given its rulings on the quiet title and cancellation of instrument causes of action.

---

[1] The court's findings in its statement of decision are discussed in greater detail *post*.

9

DISCUSSION

Before reaching the substantive issues Tasty has raised in its appeal, we must address its failure to adhere to basic appellate rules. Throughout its brief, Tasty makes numerous assertions of fact and recitations of procedural matters that were unsupported by citation to the record and were not found in our review of the appellate record. California Rules of Court, rule 8.204(a)(2)(C) states an appellant's opening brief must "[p]rovide a summary of the significant facts *limited to matters in the record*." (Italics added.) Rule 8.204(a)(1)(C) requires references to matters in the record be supported "by a citation to the volume and page number of the record where the matter appears." "If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived. [Citations.]" (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061.) We disregard assertions of fact in Tasty's brief that are unsupported by the record or citation to the record.

I.

RIGHT TO A JURY TRIAL

Tasty argues the judgment must be reversed because the court refused to provide it with a jury trial. Tasty makes several assertions in support of this argument. Tasty asserts it was deprived of its right to a jury trial because the court's protocols during the COVID-19 pandemic made conducting a jury trial impossible and the court commenced the trial despite both parties' request the case be continued until a jury could be impaneled. Tasty further asserts it "strenuously objected to the court deciding unilaterally[] to try the case without a jury in total disregard of [its] request for a jury trial." Tasty's assertions are refuted by the record.

The court's minute order states that when the matter was called for trial on November 9, 2020, the court informed the parties the four causes of action in the complaint "are equitable actions not triable by a Jury" and "[*b*]*oth counsel agree the*

10

*matter is to proceed as a Court Trial.*" (Italics added.)[2] There is no indication in the appellate record Tasty objected to trying the case without a jury. Nor does the record reflect the parties presented the court with a stipulation or joint request to continue the trial until a jury could be impaneled. The record shows that on November 9, each party requested the start of the trial be continued briefly for reasons unrelated to impaneling a jury; Tasty sought a two-day continuance. Thus, the record does not support Tasty's assertion the court "unilaterally" decided to try the case without a jury over Tasty's objection and over the parties' request to continue the matter until a jury could be impaneled.

Nothing in the appellate record shows Tasty argued to the trial court before, during, or after the bench trial that its right to a jury trial was being infringed. Tasty willingly proceeded with a court trial, lost, and now claims a violation of its right to a jury trial. By failing to raise it below, Tasty forfeited its contention of error. (See *Taylor v. Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 900-901 ["'a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury'"].)

Moreover, Tasty makes no effort to demonstrate the court erred when it concluded the parties were not entitled to a jury trial because the causes of action were in equity. (See *Shaw v. Superior Court* (2017) 2 Cal.5th 983, 995 ["'"jury trial is a matter of right in a civil action at law, but not in equity"'"].) "'[A]n appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.' [Citation.]" (*Ribakoff v.*

---

[2] Because there was no court reporter at the hearing, we do not have a verbatim transcript of this proceeding. Tasty could have provided us with an agreed statement (Cal. Rules of Court, rule 8.134) or a settled statement (*id.*, rule 8.137) if it believed the minute order did not accurately represent the discussion at the hearing, but it did not.

*City of Long Beach* (2018) 27 Cal.App.5th 150, 162.) Because Tasty did not demonstrate the court erred, Tasty's contention fails on this ground also.

## II.

### SUFFICIENCY OF THE EVIDENCE

The court ruled in favor of Aska Sakan on three of its causes of action: quiet title, cancellation of instruments, and injunctive relief. The core issue for each cause of action was whether Kaal signed the deed of trust and promissory note, evidencing a debt of $3.9 million to Tasty, or whether Kaal's signature was forged on these documents. Based on the totality of the evidence, the court found Aska Sakan had proved Kaal's signature was forged. Tasty contends the court's finding is not supported by substantial evidence because Tasty presented unrebutted evidence through its handwriting analysis expert that the signature on the contested documents matched Kaal's signature. We disagree and conclude the court's finding of forgery is supported by substantial evidence.

A. Statement of Decision

The court provided a lengthy statement of decision, detailing its findings and credibility determinations. The court found credible Kaal's testimony that he did not sign the deed of trust or promissory note. The court also found credible Kaal's testimony: (1) he did not know Nourizadeh or her companies—Samimi or Tasty; (2) he did not enter into an agreement with them; (3) his Moroccan company, Oujhalkhair, did not enter into any partnership agreement with Samimi; and (4) he did not receive any marble from Samimi.

The court found not credible Tasty's "theory of how the deed of trust and promissory note came into existence." The court noted Tasty had presented a partnership agreement between Oujhalkhair and Samimi concerning the creation of Aska Sakan. But the court did not find it to be persuasive evidence, explaining: ". . . the deed of trust was not between Oujhalkhair Sarl and Samimi Marble Quarries, but was between Aska Sakan

12

and LA's Tasty & Healthy Food. LA's Tasty & Healthy Food's explanation of how the promissory note ended up being between Aska Sakan and LA's Tasty & Healthy Food as a result of the purported marble deliveries and wire transfers from third parties to Oujhalkhair Sarl, is unsatisfactory. Moreover, the deed of trust was recorded with the Orange County Clerk-Recorder more than two years . . . after it was signed. LA's Tasty & Healthy Food explained that the deed of trust was not immediately recorded because Kaal was told that his L1 Visa would be denied. This explanation is not credible because it essentially suggests that Kaal's immigration attorneys had advised their client to commit immigration fraud."

The court found "Wasiri was admittedly familiar with Kaal's signature" and "Wasiri had the opportunity, access, motive, and means to accomplish the forgery of the promissory note and deed of trust." The court further found "other documents tied to Wasiri . . . suggested that he had forged signatures or documents in other instances, such as the Statement of Information for LA's Tasty & Healthy Food, and Aska Sakan's bank statements that he sent to Kaal."

In its statement of decision, the court also addressed the testimony of the parties' experts and the notary public's acknowledgment page, stating: "[Aska Sakan's expert] Linda Mitchell, a forensic document examiner, testified that because Kaal's signature was so simple, it was easy to copy. The notary acknowledgment attached to the deed of trust was the same as the notary acknowledgment attached to the general indemnity agreement. The two notary acknowledgments were copies of each other. [Tasty's expert] Beth Chrisman, a forensic document examiner, testified that it was unusual for the same notary acknowledgment to be attached to two different documents. The documents should have had different notary acknowledgments. Chrisman[ ] testified Kaal's signatures on the deed of trust and promissory note (questioned documents) were the same as Kaal's signature on documents presented to her by Wasiri as 'known documents.' This testimony did not assist LA's Tasty & Healthy Food because Chrisman

13

admitted that the same person who signed the known documents could have also signed the questioned documents. In other words, if Wasiri signed all the 'known documents,' then he could have signed the questioned documents. Most of the known documents were pay stubs, and likely signed by Wasiri, who was the car wash manager."

The court continued explaining why it found Tasty's evidence not credible. The court found Tasty's evidence of "[t]he partnership agreement, receipts for wires, receipts for marble, and invoices for marble appear[ed] to have been fabricated." Tasty's witness Jalali had testified about the drafting and signing of the partnership agreement and that he had prepared the invoices for marble shipments sent to Oujhalkhair, but the court found Jalili's "testimony was not credible for several reasons," and the court explained those reasons.

Based on the totality of the evidence, the court found Aska Sakan had proved the deed of trust and promissory note were forged and void.

B. Standard of Review

When reviewing a judgment based upon a statement of decision following a bench trial, "[w]e apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]

"'A single witness's testimony may constitute substantial evidence to support a finding. [Citation.] It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.] "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." [Citation.]'" (*Ribakoff v. City of Long Beach, supra*, 27 Cal.App.5th at p. 162.)

14

"We emphasize that the test [under the substantial evidence standard] is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

C. Substantial Evidence Supports the Court's Finding the Deed of Trust and Promissory Note Were Forged

Tasty contends the court's determination that Kaal's signatures on the promissory note and deed of trust had been forged was "based on speculation and guesswork and [was] not supported by any[ ] – *much less substantial* – evidence presented at trial." We disagree. Examining the record we have been provided in the light most favorable to the judgment, we conclude substantial evidence supported the trial court's finding the deed of trust and promissory note were forged.

The court found Kaal's testimony credible and found not credible evidence Tasty presented to show Kaal signed the contested documents. We "are bound by the trial court's credibility determinations. [Citations.]" (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) Kaal testified he did not sign the deed of trust and the promissory note. Kaal's credible testimony by itself was sufficient to constitute substantial evidence. (*Ibid.* ["'The testimony of a single witness may be sufficient to constitute substantial evidence'"].) But Kaal's denial was not alone, it was corroborated by other evidence. Aska Sakan's forensic document expert, Mitchell, testified Kaal's signature was easy to copy. The timing of the filing of the deed of trust rendered it suspect, as it was purportedly signed in 2015 but not filed until 2017, after Wasiri was fired. The evidence of alleged marble shipments from Samimi and wire

15

transfers to Oujhalkhair did not prove Aska Sakan had incurred a debt to Tasty. And then there was the improper duplication of the single notary public's acknowledgment page and attachment to two separate documents.

Tasty makes further arguments challenging the sufficiency of the evidence supporting the court's forgery finding. Tasty asserts it presented unrebutted expert witness testimony that established the signatures on the deed of trust and promissory note matched known exemplars of Kaal's signature. The trial court addressed this issue in its statement of decision, explaining Chrisman's testimony only established that the same person signed the contested documents and the exemplar or known documents. Chrisman's testimony did not prove Kaal signed the contested documents. Chrisman assumed Kaal signed the exemplar documents because Wasiri told her they were signed by Kaal. However, the court found the known documents were "likely" signed by Wasiri when he was the manager of the carwash. Tasty contends the court's finding was speculative and Kaal's testimony established he was solely responsible for signing financial documents when he was in the United States. We disagree. Tasty's evidence did not prove Kaal signed either the contested or known documents. The court's forgery finding was supported by substantial evidence.

Moreover, Tasty's challenge to the sufficiency of the evidence fails for another reason—it implicates portions of the appellate record we have not been provided. Tasty asserts the testimony of its expert was "unrebutted" by the testimony of Aska Sakan's handwriting expert, Mitchell. But we do not have a record of Mitchell's testimony. No court reporter was present to transcribe Mitchell's testimony and Tasty did not obtain an agreed or settled statement concerning her testimony. (Cal. Rules of Court, rules 8.134 & 8.137, respectively.) It is Tasty's burden as the appellant to present an adequate record for a meaningful substantial evidence review, and Tasty has failed to do so. When an appellant does not provide a proper record for review, it may not contend the record lacks substantial evidence with respect to a factual issue in a case.

16

(*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186-187; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

With or without a complete record of the trial proceedings, we must reject Tasty's argument the evidence of forgery was insufficient because Chrisman's testimony was uncontradicted. The test is not whether Tasty's evidence was uncontradicted, but whether there is substantial evidence in favor of Aska Sakan. (*Howard v. Owens Corning, supra*, 72 Cal.App.4th at p. 631.) And as we have explained, the court's forgery finding was supported by substantial evidence.

We likewise reject Tasty's argument it should have prevailed at trial because the evidence established it was more likely than not that Kaal signed the deed of trust and promissory note. This argument turns the substantial evidence standard upside down. Our task is to review the record in the light most favorable to the judgment and determine whether it is supported by substantial evidence. We do not reweigh the evidence or determine whether substantial evidence supports the losing party's version of the events. (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) "We are 'not a second trier of fact.' [Citation.]" (*Id.* at p. 1246.)

Tasty's argument challenging the court's credibility findings similarly seeks to have us reweigh the evidence. Tasty identifies four facts the court relied upon in making its credibility findings: (1) the companies named in the deed of trust and promissory note were not the same as those named in the partnership agreement; (2) the deed of trust and promissory note were not recorded for two years; (3) the notary public's acknowledgment page attached to the deed of trust was the same as the one attached to the indemnity agreement; and (4) Jalali's testimony was inconsistent, internally and with other evidence presented at trial. Tasty asserts each "is subject to a reasonable explanation" and "none" should have impacted the court's ruling. Tasty proceeds to offer a "reasonable explanation" for some of these issues, seeking to explain why the court reached the wrong conclusion. As a court of review, we do not reevaluate witness

17

credibility findings or reweigh the evidence presented below.  (*Foust v. San Jose Construction Co. Inc., supra*, 198 Cal.App.4th at p. 188.)  Thus, Tasty's contention fails.


## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.



MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.