Filed 12/3/24  Sun v. Sanders CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SARAH DECORDOVA SUN, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CAROLYN SANDERS, <br><br> Defendant and Appellant. | G062347, G062434 <br><br> (Super. Ct. Nos. 30-2022-01285031, 30-2022-01288860) <br><br> ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| CAROLYN SANDERS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SARAH DECORDOVA SUN, <br><br> Defendant and Respondent. | |

It is ordered that the opinion filed November 19, 2024, be modified as follows:

On page 4, last sentence of the second paragraph, the name "Sun" is changed to "Sanders" so that the sentence reads:

"She posted the advertisement after her altercation with Sanders and testified she offered a lower rental rate because the renter would have to live with a "nutcase.""

On page 13, sentence above the "DISPOSITION" heading, the name "Sun" is changed to "Sanders" so that the sentence reads:

"For the forgoing reasons, Sanders has failed to establish any error."

There is no change in the judgment.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

2

Filed 11/20/24  Sun v. Sanders CA4/3 (first modifiecation)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARAH DECORDOVA SUN,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAROLYN SANDERS,<br><br>    Defendant and Appellant. | G062347, G062434<br><br>(Super. Ct. Nos. 30-2022-01285031, 30-2022-01288860)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| CAROLYN SANDERS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SARAH DECORDOVA SUN,<br><br>    Defendant and Respondent. | |

It is ordered that the opinion filed November 19, 2024, be modified as follows:

On page 13 under the "DISPOSITION" heading, second sentence, the name "Sanders" is changed to "Sun" so that the sentence reads: "Sun shall recover her costs incurred on appeal."

There is no change in the judgment.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARAH DECORDOVA SUN,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CAROLYN SANDERS,<br><br>    Defendant and Appellant. | G062347, G062434<br><br>(Super. Ct. Nos. 30-2022-01285031,<br> 30-2022-01288860)<br><br>O P I N I O N |
| CAROLYN SANDERS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SARAH DECORDOVA SUN,<br><br>    Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Sandy N. Leal, Judge. Affirmed.

Carolyn Sanders, in pro. per., for Appellant.

No appearance for Respondent.

\*      \*      \*

Appellant Carolyn Sanders appeals from an order granting respondent Sarah Decordova Sun's request for a civil harassment restraining order (CHRO) against Sanders and denying Sanders' request for a CHRO against Sun. On appeal, Sanders contends the court violated her due process rights and right to a fair and impartial trial. We disagree with Sanders' contentions and affirm the order.

## FACTS

### I.

### THE PARTIES' REQUESTS FOR RESTRAINING ORDERS

In October 2022, Sun filed a request for a CHRO against Sanders. A few weeks later, Sanders filed a request for a CHRO against Sun. Neither filing is included in our record on appeal.

### II.

### THE NOVEMBER 2022 HEARING

In November 2022, the court commenced a hearing on both parties' requests. At the outset, the court noted the parties filed prior requests for CHROs in July 2022, which a commissioner had denied.[1] The

---

[1] Although the court initially said both parties filed requests for CHROs in July 2022, the court later said Sanders had filed a CHRO while Sun requested a domestic violence restraining order.

2

parties confirmed their current requests concerned conduct occurring after July 2022.

Sun then testified Sanders, a tenant who lived with her in her home, attacked her in August 2022. Sun explained: "I let my dog out . . . to urinate, and as I was going back up the stairs trying to avoid any further conflict,[2] she jumped one or two steps in front of me and started arguing with me and pulled out her camera. And then I followed my dog into her room, and then she got hysterical and started yelling, 'Get out of my room. Get out of my room.' And she took the phone, and she hit my head a number of times." Sun specified that Sanders hit her in the head six to eight times and also hit her in the eye.

In response to the court's questions, Sun testified she pushed Sanders' "belly" and pinched her after Sanders hit her. Sun also testified the police arrived, and she went to the hospital later in the day. She suffered "contusions to the head, two broken ribs, possible complications breathing, [and] multiple bruises." After the hospital visit, Sun went to a hotel because she "was afraid for [her] life."

Sanders, who appeared at trial in propria persona, cross-examined Sun and provided a video of the altercation that she had secretly recorded from a camera in her bedroom. The court reviewed the video, noting it was "manipulated" and included no audio. The court ultimately did not admit the video into evidence because it was altered and recorded without Sun's permission in her home. But the court allowed Sanders to use it for impeachment purposes.

---

[2] It is not clear what Sun meant by "further conflict."

3

Sanders also attempted to introduce a second video she recorded from the camera in her bedroom. The court again held it would not admit the video into evidence but allowed Sanders to use it for impeachment purposes.

During cross-examination, Sanders questioned Sun about an advertisement she had posted on Craigslist. Sun testified she posted the advertisement looking for an "ex-military" or "security trained" person to rent a room in her home where Sanders was living. She posted the advertisement after her altercation with Sun and testified she offered a lower rental rate because the renter would have to live with a "nutcase."

Sanders next questioned if Sun had written a letter to the "Laguna Niguel City Counsel" stating "[i]t would have been easier to pull out a gun to remove [Sanders] than to rely on [the] local laws." Sun denied writing those words and testified she had written a letter to a City Attorney "objecting to the tenant landlord laws that would have [Sun] homeless while . . . [Sanders] was occupying [her] home illegally."

Finally, Sanders asked Sun if she had written a letter to the credit bureau stating Sanders was not worthy of credit. Sun acknowledged writing the letter, which the court admitted into evidence.

At the conclusion of the hearing, the court continued the matter and issued temporary restraining orders so the parties would have no contact with each other.

III.

THE JANUARY 2023 HEARING AND THE COURT'S ORDER

In January 2023, the court held another hearing where Sanders described a different version of events. Sanders generally testified Sun had been throwing away her possessions so she had requested Sun stay out of her bedroom. In August 2022, Sanders testified she saw Sun entering her

4

bedroom and caught the incident on a "video recorder" that was on in her bedroom to ensure she was "safe and secure." Sanders claimed she "was showing [Sun] that [she] caught her on video" and Sun "became irate and attacked [her]." Sanders called the police who reviewed the videos recorded on Sanders' phone and bedroom device.

The court admitted a police report of the incident into evidence and noted it had numerous redactions and "large portions of images or statements" that could not be reviewed. The court also reviewed a video of the incident recorded on Sanders' phone.

Sanders next testified a stranger stopped by Sun's home where Sanders was living around October 2022. According to Sanders, the individual said Sun had posted an advertisement on Craigslist "looking for ex-military or security-trained who could basically take care of a tenant with a smart mouth." Sanders further claimed a letter was taped to her door in November 2022. She insisted Sun admitted she had submitted the letter through the City of Laguna Niguel's "portal." Sun's counsel objected that Sanders was misstating Sun's testimony from the prior hearing, and the court sustained the objection. The court admitted the letter into evidence but indicated it would "give it very little weight" because it did not know who the letter was from or any other details. Sanders next testified Sun wrote a letter to the credit bureau attempting to harm her credit score.

During cross-examination, Sun's counsel asked Sanders to admit she had not paid rent while living at Sun's home. Sanders provided various nonresponsive answers. But she admitted a judgment was entered against her in an unlawful detainer action. At the time of the hearing, Sanders was still living at Sun's home.

At the conclusion of the hearing, the court started to announce its decision when the bailiff noticed Sanders was recording the proceedings on her phone. Sanders initially denied recording on her phone, but the bailiff asked her to open a folder on her phone where the video was saved. The court requested the bailiff and Sanders delete the video.

The court then announced its ruling, holding Sun's testimony was credible while Sanders' testimony was not credible. The court noted the statements in Sanders' request for a CHRO were inconsistent with the videos she provided to the court. The court explained a video showed Sun was retrieving her dog from Sanders' room and then Sanders placed a phone in Sun's face. Sun pushed the phone out of her face, and it appeared to fall to the ground. The court added there was no video of the subsequent altercation but there were photographs of Sun's injuries, which were significant. The court also was "disturbed" one of Sanders' videos was "altered and slowed" and depicted "a brief capture of what occurred." While Sanders alleged Sun posted an advertisement online seeking to have her harmed by someone with a concealed weapon, the court held there was no evidence to support this assertion. Instead, the court noted the Craigslist advertisement was for a roommate looking to live with a middle-aged woman "with a nasty mouth." Finally, the court stated it did not find Sanders credible "even more so given that despite the repeated admonishments that you cannot record in this courthouse" Sanders continued to do so. The court took judicial notice of an order issued in another proceeding before a commissioner who noted Sanders had improperly recorded those proceedings.

The court accordingly denied Sanders' request for a restraining order and granted Sun's request. The restraining order required Sanders to stay at least 100 yards away from Sun, Sun's mother, as well as Sun's home

and vehicle for two years. The order also required Sanders to not harass or contact Sun. The court further scheduled a hearing for Sanders to show cause why it should not impose monetary sanctions for her recording of the proceedings.

In February and March 2023, Sanders filed notices of appeal in both of the underlying actions.

IV.

THE MARCH 2023 ORDER TO SHOW CAUSE HEARING

At the March 2023 order to show cause hearing, the bailiff testified she observed Sanders recording the proceedings on her phone when the court was announcing its decision. The bailiff indicated she asked Sanders to delete the video, which Sanders did. The bailiff also testified Sanders "was informed many times not to record at all, no pictures, from not only myself, but also . . . [the] Clerk and also the Court as well."

On cross-examination, Sanders repeatedly probed whether the bailiff improperly searched her phone without a warrant. The bailiff denied searching the phone and testified she asked Sanders to unlock the phone and delete the video of the proceedings. At the end of the hearing, the court took the matter under submission. Although Sanders included the court's subsequent order as an exhibit on appeal, it does not appear Sanders filed a notice of appeal from the latter order.

DISCUSSION

Sanders argues the court violated her due process rights and her right to a fair and impartial trial. Based on the record before us, we disagree.

7

# I.

## APPLICABLE LAW AND STANDARD OF REVIEW

Code of Civil Procedure section 527.6, subdivision (a)(1) allows a victim of harassment to seek an order to prohibit harassment.[3] We review a trial court's issuance and denial of a restraining order request under section 527.6 for abuse of discretion, and the court's factual findings are reviewed for substantial evidence. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

As noted *ante*, Sanders raises various due process arguments regarding the hearings and Judge Leal's role therein. Due process entitles a party to notice and an opportunity to be heard. (*In re Harris* (2024) 16 Cal.5th 292, 322-323.) "'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law."'" (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.)

# II.

## SANDERS' CONTENTIONS HAVE NO MERIT

Here, Sanders complains the court disregarded material evidence, namely, a police report of the incident, Sun's Craigslist advertisement, Sun's letter to the credit bureau, evidence Sun allegedly violated the court's temporary restraining order after it was issued at the November 2022 hearing, and evidence Sanders acted in self-defense. To the contrary, the reporter's transcript shows the court received and considered

---

[3] All further statutory references are to the Code of Civil Procedure.

8

testimony about the latter evidence. The court's ruling simply demonstrates it considered Sun to be more credible than Sanders. It is not our role to reweigh the evidence or assess credibility. (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.)

Sanders likewise claims the court ignored Sun's "Castle Law Doctrine testimony" regarding a letter in which "she wrote 'it would have been easier to use a gun' to remove . . . [Sanders] than rely on the laws." Sanders' assertion is contradicted by the record. Sun denied writing the portion of the referenced letter regarding a gun. The reporter's transcript also indicates Sun testified the letter was written by an anonymous person and taped to Sanders' door. The court heard testimony about all of this.

Sanders next contends the videos she recorded of the incident contradicted Sun's testimony and requests to augment the record with those videos. Although Sanders played the videos for the trial court, there is no indication in the record that the court admitted the videos into evidence. (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 815) The reporter's transcript also indicates Sanders altered the videos, which did not depict the entire altercation and were taken without Sun's permission in her home. We accordingly deny Sanders' motion to augment.[4]

---

[4] Sanders also filed multiple motions to augment the

Sanders further argues the court "rejected physical court transcript evidence." She appears to refer to Sun's testimony in a prior trial before another court. The court did not err by limiting questioning and testimony about the transcripts because Sanders did not properly lodge the transcripts with the trial court. The court noted this error at the November 2022 hearing and suggested Sanders could continue her line of questioning at the next hearing if she lodged the transcripts. She did not do so.

In addition to her assertion that the court ignored the evidence, Sanders insists the court engaged in "gross judicial misconduct" and was biased in favor of Sun. She claims the court was "looking for reasons to assess punitive damages and humiliate [her] partly as revenge" for her removal of another judge from the unlawful detainer action. She also asserts the court coerced the court reporter to remove certain content from the reporter's transcript. None of these conclusory allegations are supported by the record.

---

record to include other items: (1) a transcript of a hearing before another judge; (2) a September 2022 e-mail from Sun to another person; (3) a subpoena filed by Sanders; (4) a February 2023 e-mail from someone who appears to work for the United States Postal Service; (5) a subpoena "[f]raudulently filed" "to obstruct justice under the color of authority"; (6) an October 2022 e-mail from an unidentified third party to Sun; (7) a Facebook post; (8) transcripts of the November 2022, January 2023 and March 2023 hearings; and (9) the court's June 2023 sanctions order issued after the order to show cause hearing. We deny the motions because the matters designated were either not before the trial court, are not necessary to the resolution of this appeal, or are already included in the record on appeal. Sanders also requests we: (1) correct "the [c]ourt's file" because she claims it improperly says no court reporter appeared for a February 2023 hearing; (2) amend the "Civil Cover Sheet to include Service Requirements upon The State of California Attorney General"; and (3) amend the notice of appeal to indicate she is the appellant. We already issued an order in January 2024 granting Sanders' request to amend the notice of appeal. Her other requests are denied as they are not relevant to the resolution of this appeal.

Sanders further contends Judge Leal rushed her along and seemed "disoriented and possibly under the influence." As an example, she suggests the court made contradictory statements as to whether it reviewed one of the videos. Once again, Sanders' bold accusations are not supported by the record. Regarding the video, Sanders appears to misunderstand the court's comments. The court stated one of the videos did not depict the entire altercation, and it later stated the video was a brief depiction of what had occurred. There is nothing contradictory about these statements. We have reviewed the entire transcript of the hearings, and the court was engaged throughout the proceedings, asked appropriate questions for clarification, and ruled on evidentiary objections. Sanders also was afforded as much time, if not more time, as Sun to testify and to conduct cross-examination. Regardless, the court was entitled to impose reasonable limitations to preserve the expeditious nature of the section 527.6 procedure, and Sanders does not identify anything she was prohibited from saying that would have made a difference in the outcome.

Sanders next argues the court assumed the role of a prosecutor by questioning Sun and making suggestive remarks so Sun would change her testimony. Not so. By statute, the court "may make an independent inquiry." (§ 527.6, subd. (i).) Sanders does not cite to legal authority forbidding the court from asking questions, and she did not object to any of the court's questions at the hearings. The record also does not indicate the court made "suggestive remarks" to Sun. Instead, Sanders cites to portions of the reporter's transcript where the court clarified whether Sun had written a letter that was taped to Sanders' door. Sun testified she had written a letter to a City Attorney but not to Sanders. After Sun reviewed the letter in question, which stated it would have been easier to use a gun to remove

11

Sanders from the property than to rely on the local laws, Sun confirmed she did not write that letter.

Sanders likewise claims the court "obstructed" Sun's testimony. She points to portions of the reporter's transcript where she questioned Sun if she had harmed her dog. Sun testified: "Never. Quite the contrary." Sanders then asked if Sun recalled placing frying pans outside to attract coyotes. Sun testified: "Never." Sun continued to testify: "I put a pan out to . . . ." The court interjected that there was not a pending question for Sun to answer. Sanders later asked Sun the same question—whether she had put out frying pans to attract coyotes—which Sun again denied. Based on our review of the reporter's transcript, there is no evidence the court "obstructed" any testimony. Sanders elicited testimony on this topic.

As to the court's decision, Sanders complains the court initially announced it was going to issue a restraining order for one year but then changed it to two years when it later repeated its oral decision. Sanders suggests the court "punitively increased . . . [the] CHRO by an additional year after accusations [about her] recording the hearing." The court's decision was not "punitive." The court announced its decision after detailing various reasons supporting the CHRO. The court's ultimate choice of two years was warranted under section 527.6, which allows a CHRO for up to five years. (§ 527.6, subd. (j)(1).) The court also scheduled a separate order to show cause hearing to address Sanders' improper recording of the proceedings.

Finally, Sanders summarizes portions of the bailiff's testimony at the order to show cause hearing, including the bailiff's testimony that she did not have a warrant to search Sanders' phone. Sanders appears to complain about the court's subsequent sanctions order and suggests the court was biased. We need not address this issue because Sanders does not raise any

12

actual arguments with citations to the law, does not point to any specific error committed by the court in connection with the sanctions order, and does not appear to have appealed from the sanctions order. (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from'"]; Cal. Rules of Court, rule 8.100(a)(2).)

For the foregoing reasons, Sun has failed to establish any error.

## DISPOSITION

The order is affirmed. Sanders shall recover her costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.

13